[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10989

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

THADDEUS RHODES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cr-00073-AT-LTW-1

_____

Before ROSENBAUM, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Thaddeus Rhodes appeals his convictions for nine counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and five counts of carrying or using a firearm during or in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) and (ii). On appeal, Rhodes argues that he should not have been convicted of any Hobbs Act robberies or § 924(c) counts because Hobbs Act robbery is not a predicate offense for a § 924(c) conviction following the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022). Additionally, Rhodes argues that because completed Hobbs Act robbery is not a crime of violence, the district court erred when it instructed the jury that Hobbs Act robbery could be completed through fear of economic harm. He further argues that there was not sufficient evidence to support his convictions for his Hobbs Act robbery and § 924(c) convictions because the government's case was based on circumstantial evidence and there was no evidence that the robber used a real gun during the robberies. For the following reasons, we affirm.

## I.

Rhodes was charged in an indictment with several counts Hobbs Act robbery in violation of § 1951(a) (Counts One, Three, Five, Seven, Nine, Eleven, Thirteen, Fourteen, and Sixteen) and carrying or using a firearm during or in relation to a crime of violence

in violation of § 924(c)(1)(A) and (ii) (Counts Two, Four, Six, Eight, Ten, Twelve, and Fifteen).

Before trial, Rhodes moved to dismiss the § 924(c) counts on the basis that Hobbs Act robbery was not a predicate crime of violence that can support a conviction under § 924(c) following *United States v. Taylor*. In relevant part, Rhodes argued that *Taylor* abrogated this Court's precedent as to whether completed Hobbs Act robbery was a crime of violence. Rhodes also argued that the standard Hobbs Act robbery instruction was overbroad because it can be committed by causing fear of purely economic harm to nontangible property. Following a pretrial hearing on Rhodes's motion, the district court denied the motion, finding that there was a difference between completed and attempted Hobbs Act robbery.

The case proceeded to trial. The government called Amanda Lawson, who worked in 2017 at a Dollar General store in Ellenwood, Georgia, who testified to the following. On October 19, 2017, an individual who Lawson described as a black male with a tissue over his face entered the store with a gun and told Lawson to give him money. After the robbery, Lawson saw the individual get into a white Nissan Altima. Through Lawson's testimony, the government entered video and images from the robbery.

Francenia Brown, who worked at a Family Dollar store in Ellenwood in 2017, testified to the following. On November 27, 2017, a black male with a black handgun came into the store and asked Brown for everything out of the store's safe. During the robbery, the robber lifted up his sweater and showed her that he had a

gun. Brown saw the robber leave in a silver compact car. The government admitted video of the robbery and of the robber leaving the store through Brown's testimony.

Egypt Singh, who worked in a Metro PCS store during January 2018, then testified to the following. Singh was working one day in January 2018 when the store was robbed. The robber was a black male with a napkin over his face and showed Singh a black gun, asking for money. The government entered video footage of the robbery through Singh's testimony. Chelsea Crisp, another former employee at that Metro PCS store, similarly testified about this robbery and testified that the robber had almond-shaped brown eyes.

Debra Ledford, an employee at a Dollar General store in Stockbridge, Georgia, then testified to the following. On January 10, 2018, Ledford was working when a black male came in wearing scrubs and a paper towel over his face and robbed the store. The robber pulled up his shirt and showed her that he had a black gun.

Mashea Mays, who worked at a Little Caesars store in January 2018, then testified to the following. On January 22, 2018, a black man with almond-shaped eyes wearing a Quick Trip napkin covering his face robbed the store. The robber, who was wearing a black hoodie, a red baseball cap, and black pants, lifted his shirt to show Mays he had a gun. Mays saw the man leave in a silver Nissan.

Ashley Bennett, a former worker at a Sally Beauty Supply store in Kennesaw, Georgia, then testified to the following. On February 2, 2018, the Sally Beauty Supply store was robbed by a black

male who was wearing a napkin over his face and had a black gun tucked into his pants. Kayla Kohler, another Sally Beauty Supply store worker who was at the store on the day of the robbery, also testified about this robbery; through Kohler's testimony, the government entered a photo that Kohler took of the Nissan Altima that the robber got into after the robbery.

Then, Valeria Rodriguez, who previously worked at a Food Depot store in Norcross, Georgia, testified to the following. On February 15, 2018, a black male with a paper towel covering most of his face came into the store. Rodriguez noticed that the male looked like he had a gun. The male walked down a store aisle with medicines and exaggerated being sick. The male also approached her and asked for money. Through Rodriguez's testimony, the government entered video footage of the man and photographs of the man in the car he drove away in.

Veronica Gonzalez, a former worker at a Cricket Wireless store in Norcross, testified to the following. On June 28, 2018, Gonzalez was working when a black male with his face covered robbed the store. The robber pointed at something in his pocket and then pointed at her, another worker, and a customer, telling them all to go to the back of the store. Gonzalez gave him all the cash in the register and wallets from the back. The item in the robber's pocket was silver or black, but Gonzalez was not sure which color it was. Maria Fonseca then testified similarly about this robbery.

The government next called Joshua Brown, a former Gwinnet County Police Department officer, who testified that he

responded to a car accident on August 3, 2018.  The accident involved Rhodes, who was driving a silver Nissan Altima.

Then, Glen Harbin, a Federal Bureau of Investigation ("FBI") officer, testified to the following.  On February 21, 2019, Harbin was collecting evidence and searched a home in Decatur, Georgia; this search was connected to a Hobbs Act robbery case. Harbin took photographs of cell phones he found in that home, of a piece of mail addressed to Rhodes with the same address as the searched home, and of a red hat.

Bradley Rhoden, a special agent with the FBI in 2019, then testified as follows.  On February 21, 2019, the FBI had an arrest and search warrant for Rhodes.  Through Rhoden's testimony, the government entered the following evidence (1) a photograph of a closet in an apartment Rhoden searched that had a Ruger handgun box; (2) a close-up photograph of the Ruger box; (3) a Ruger handgun that was found in the closet; and (4) photographs of that gun. Rhoden also found a BB pistol in the same closet and collected a black hooded sweatshirt during the search.

The government also called George McGee, who testified that he had conducted the cell phone extraction of Rhodes's phone. McGee later testified that he made a video of an extraction he did of one of the phones that were found.  The name of the Gmail account found on the phone was "thaddeus.rhodes."  Through McGee's testimony, the government introduced photographs that were stills from the video he took, chats and messages he found on the device, and a Google search for "man wanted for armed" found

on the device. The photographs included pictures of Rhodes wearing a black sweatshirt, pictures of him wearing red shorts, as well as pictures of a black Ruger gun and of the back and license plate of Rhodes's Nissan Altima. The photographs also contained various pictures Rhodes took of himself on his phone.

Then, James Berni, a special agent for the FBI, testified as follows. Berni made a report regarding two cell phones and a Gmail account that were attributed to Rhodes. Rhodes generally testified as to the cell phones and Gmail account being pinged near the stores on the days the robberies occurred at each store.

Laquintus Perry, a forensic accountant with the FBI, reviewed and analyzed Rhodes's Wells Fargo bank statements. Perry testified as to amounts that Rhodes deposited into those accounts following the robberies.

And the government finally called Paul Costa, a special agent with the FBI, who testified to the following. Costa investigated the nine armed robberies charged against Rhodes and noticed the modus operandi was consistent among the robberies—i.e., the physical description of a black male with a tissue or napkin over his face who wore hooded sweatshirts, the presence of a handgun, and the robber's getaway car being a silver or white four-door sedan that was sometimes identified as a Nissan. Based on the getaway car's description, he requested from the Georgia Bureau of Investigation a spreadsheet of owners of silver Nissan Altimas. When reviewing the records, Costa saw a photo of Rhodes and thought Rhodes, who had a silver Nissan Altima registered in his name, fit

the physical description of the robber. Costa also noticed that Rhodes's car windows were tinted just like the Nissan Altima pictured at the Food Depot robbery on February 15, 2018. Costa noted that, during the search of Rhodes's phone, pictures of a Ruger pistol and a Smith & Wesson gun were found. Costa also testified about messages on Rhodes's phone to "Al UPS," which indicated that he was not at work on days the robberies charged against Rhodes occurred.

During the government's case, the district court held a jury charging session. The district court stated that the issue was the relationship between the Hobbs Act charge and the § 924(c) charge. The district court explained that the Eleventh Circuit Judicial Council adopted the charge that it would give. The court then went through the jury instruction for defining the offenses charged. The government then objected to the § 924(c) charge instructions because the instruction did not include the entire definition of a firearm that was located in the pattern instruction and requested that the whole instruction be included. In response, Rhodes argued that a BB gun was not a firearm in the context of a § 924(c) charge. The government responded by pointing to *United States v. Hunt*, 187 F.3d 1269 (11th Cir. 1999), arguing that, under *Hunt*, it was not required to prove that the gun used was not a toy but that it was for the jury to weigh the evidence and determine if it was a gun. After additional argument, Rhodes again objected to the court not giving a BB gun instruction. The court stated that it took that under advisement. Rhodes, however, did not object to the Hobbs Act robbery instruction.

After the government rested, Rhodes moved for a judgment of acquittal on all counts, arguing that there was insufficient evidence to prove beyond a reasonable doubt that he committed any of the robberies at issue in the case. The district court denied Rhodes's motion. Rhodes objected to the court's ruling and then rested. Following closing arguments, Rhodes reminded the district court about his motion *in limine* seeking to dismiss the § 924(c) counts, which the district court denied.

The district court then instructed the jury. As relevant to this appeal, the court instructed the jury that Hobbs Act robbery is defined as:

> One, that the defendant knowingly acquired someone else's personal property; two, that the defendant took the property against the victim's will by using actual or threatened force or violence or causing the victim to fear harm either immediately or in the future; and, three, that the defendant's actions obstructed, delayed, or affected interstate commerce.

The instruction continued that "[f]ear means a state of anxious concern, alarm, or anticipation of harm. It includes the fear of financial loss as well as fear of physical violence." The jury ultimately found Rhodes guilty on all counts.

Following trial, the government moved to dismiss Counts Four and Eight. The district court granted the motion. Rhodes was then sentenced to 420 months and 1 day of imprisonment. This appeal ensued.

## II.

Rhodes first argues that he should not have been convicted because Hobbs Act robbery is not a predicate offense for a § 924(c) conviction following the Supreme Court's decision in *Taylor*. Whether an offense is a crime of violence under § 924(c) is a question of law that we review *de novo*. *United States v. Wiley*, 78 F.4th 1355, 1360 (11th Cir. 2023).

Section 924(c) prohibits the use, carrying, or possession of a firearm during and in relation to or in furtherance of "any crime of violence or drug trafficking crime" and provides for a mandatory consecutive sentence for any defendant who uses a firearm during a crime of violence. Section 924(c)'s "elements clause" defines a "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A).

Here, Rhodes was convicted of Hobbs Act robbery in violation of § 1951. Hobbs Act robbery criminalizes:

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, . . . , or the person or property of . . . anyone in his company at the time of the . . . obtaining.

§ 1951(a), (b)(1).

In *In re Saint Fleur*, 824 F.3d 1337 (11th Cir. 2016), we concluded that Hobbs Act robbery "clearly" qualifies as a crime of violence under § 924(c)'s elements clause, noting that it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* at 1340–41 (quoting § 924(c)(3)(A)). Subsequently, in *United States v. St. Hubert*, 909 F.3d 335 (11th Cir. 2018), *abrogated on other grounds by Taylor*, 596 U.S. 845, we held that, pursuant to § 924(c)'s elements clause in § 924(c) and *Saint Fleur*, Hobbs Act robbery is a crime of violence because "[a] conviction for Hobbs Act robbery by definition requires 'actual or threatened force, or violence, or fear of injury, immediate or future, to person or property,'" noting that § 924(c)'s elements clause referred "to the 'use, attempted use, or threatened use of physical force against person or property.'" *Id.* at 348 (alteration adopted) (emphasis removed) (first quoting § 1951(b)(1); then quoting § 924(c)(3)(A)). In holding so, we reasoned that there was no "'realistic probability' that Hobbs Act robbery could encompass nonviolent conduct." *Id.* at 350 (quoting *United States v. Hill*, 832 F.3d 135, 140 (2d Cir. 2016)). We determined that there was no "plausible scenario" in which the Hobbs Act applied to a robbery "that did not involve, at a minimum, a threat to use physical force," or a situation "in which a Hobbs Act robber could take property from the victim against his will and by putting the victim in fear of injury (to his person or property) without at least threatening to use physical force capable of causing such injury." *Id.*

The Supreme Court in *Taylor* held that, under the categorial approach, *attempted* Hobbs Act robbery does not qualify as a

predicate crime of violence under § 924(c)'s elements clause. 596 U.S. at 851. The Court explained that, to prove attempted Hobbs Act robbery, the government must show that the defendant intended to unlawfully take or obtain personal property by means of actual or threatened force and completed a "substantial step" toward that end. *Id.* But the Court noted that, to show a substantial step, the government need not show that the defendant actually used, attempted to use, or even threatened to use force, as required by § 924(c). *Id.* Thus, the Court abrogated our holding in *St. Hubert* that *attempted* Hobbs Act robbery satisfied § 924(c)'s elements clause.

However, following *Taylor*, we have found that "*Taylor* did not disturb our holding that completed Hobbs Act robbery is a crime of violence." *Wiley*, 78 F.4th at 1365. Under the prior precedent rule, we must adhere to our past decisions unless a prior panel's decision has been overruled or abrogated by the Supreme Court or by us sitting *en banc*. *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008); *see also United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (explaining that the intervening Supreme Court decision must be clearly on point and "actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel").

We are bound by the prior precedent rule to apply *Wiley*; as such, Rhodes's argument is foreclosed by our precedent. Therefore, the district court did not err when it found that completed

Hobbs Act robbery is a crime of violence. Accordingly, we affirm as to this issue.

### III.

Rhodes next argues that, in *St. Hubert*, we did not consider the argument that this Court's Pattern Offense Instruction 70.3 confirmed that Hobbs Act robbery did not require the use or threatened use of violent force against property. Thus, Rhodes says, because completed Hobbs Act robbery is not a crime of violence, the district court erred when it instructed the jury that Hobbs Act robbery could be completed through fear of economic harm.

We normally review the legal accuracy of jury instructions *de novo*. *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000). But where the defendant makes no specific objection to the jury charge at trial, we review the claim for plain error. *United States v. Schlei*, 122 F.3d 944, 973 (11th Cir. 1997). And, under the doctrine of invited error, we will not address, even for plain error, the merits of an error that the appellant invited or induced the district court to make. *United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006). Where a party agrees with a court's proposed jury instructions, invited error applies. *See United States v. Frank*, 599 F.3d 1221, 1240 (11th Cir. 2010); *United States v. Silvestri*, 409 F.3d 1311, 1337 (11th Cir. 2005).

Here, Rhodes did not object to the jury instructions on the basis of this argument during the jury charging session. And, when prompted by the district court as to whether there were any

objections to the jury instructions, Rhodes replied that his only objection was to the intent to affect interstate commerce section and that he had no other objections. Given Rhodes's affirmative acceptance of the jury instructions, he invited any claimed error. *See Silvestri*, 409 F.3d at 1337. But even if we were to review for plain error, we would affirm as to this issue. Indeed, our precedent holds that completed Hobbs Act robbery satisfies § 924(c)'s elements clause, *see Wiley*, 78 F.4th at 1365, and Rhodes's argument that we may have overlooked a particular argument has no force under the prior precedent rule, *see In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) ("We have held that 'a prior panel precedent cannot be circumvented or ignored on the basis of arguments not made to or considered by the prior panel.'" (quoting *Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1234 (11th Cir. 2006))). Further, Rhodes has not identified any precedent from this Court or the Supreme Court holding that this Court's pattern jury instruction for Hobbs Act robbery is improper. *See United States v. Humphrey*, 164 F.3d 585, 588 (11th Cir. 1999). Thus, even reviewing for plain error, Rhodes's argument fails.

Accordingly, we affirm as to this issue.

## IV.

Finally, Rhodes argues that there was not sufficient evidence to support his convictions for his Hobbs Act robbery and § 924(c) convictions. In response, the government asserts that there is sufficient evidence connecting Rhodes to each of the robberies for which he was convicted.

We review *de novo* whether there was sufficient evidence to support a conviction. *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). In reviewing the sufficiency of the evidence, we view the record in the light most favorable to the government, resolving all reasonable inferences in favor of the verdict. *Id.* The evidence will be sufficient to support a conviction if "a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Id.* at 1284-85 (quoting *United States v. Calhoon*, 97 F.3d 518, 523 (11th Cir. 1996)).

The test for sufficiency is the same, regardless of whether the evidence is direct or circumstantial, but where the government relied on circumstantial evidence, reasonable inferences must support the conviction. *United States v. Martin*, 803 F.3d 581, 587 (11th Cir. 2015). We will assume that the jury resolved all questions of credibility in a manner supporting the verdict. *Jiminez*, 564 F.3d at 1285. Additionally, the evidence need not exclude every reasonable hypothesis of innocence for a reasonable jury to find guilt beyond a reasonable doubt. *United States v. Cruz-Valdez*, 773 F.2d 1541, 1545 (11th Cir. 1985) (en banc). Instead, the jury is free to choose among alternative, reasonable interpretations of the evidence. *Id.*

For example, in *United States v. Hunt*, 187 F.3d 1269 (11th Cir. 1999), we held that a conviction for brandishing a gun during the commission of a crime under § 924(c) "may be sustained by lay witness testimony that a defendant carried or used a gun." *Id.* at 1270. The evidence in *Hunt* included witness testimony that Hunt possessed a firearm during a bank robbery, including one witness's

testimony that Hunt "cocked the gun" in her face. *Id.* We determined that the government did not have to "show to a scientific certainty that a defendant is carrying a device that fires projectiles by means of an explosive," nor did it have to offer the gun into evidence or present expert witness testimony identifying the object as a firearm. *Id.* Subsequently, in *United States v. Woodruff*, 296 F.3d 1041 (11th Cir. 2002), we applied *Hunt* in affirming a defendant's § 924(c) conviction, even though the firearm was not in evidence, based upon the witness testimony about the weapon. *See id.* at 1049.

Here, viewing the record in the light most favorable to the government, we find that there was sufficient evidence to support Rhodes's convictions for Hobbs Act robbery and using a firearm during or in relation to a crime of violence. First, there was evidence showing that Rhodes owned a silver Nissan Altima, which matched the description of the car that the robber used to get away from the scene of the robberies. A search of Rhodes's residence revealed that he had a black handgun in a closet, matching the handgun described by the witnesses to the robberies. Further, Rhodes was either late to, or called out of, work on all the days of the robberies, and his cell phone was pinged within the general vicinity of the robbery locations around the time of the robberies. And Rhodes made various cash deposits into his bank accounts corresponding with the dates the robberies occurred. Second, there was sufficient evidence showing that Rhodes was carrying or using a firearm during the robberies. Indeed, the witnesses from the

different robberies testified that the robber showed them what they perceived to be a gun.

The jury could reasonably interpret the evidence described above to find Rhodes guilty. Accordingly, there was sufficient evidence that the jury could have used to reasonably conclude that Rhodes committed all nine robberies. We thus affirm as to this issue.

**V.**

For the foregoing reasons, we affirm Rhodes's convictions.

**AFFIRMED.**